Receipt # 062648

ORIGINAL

ECF

FILED
APR 1 2005
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WESTERN REFINING COMPANY, L.P., )
)
Plaintiff, )
vs. )
)
THE UNITED STATES, )
)
Defendant. )

05- 439C

## COMPLAINT

For its Complaint, Plaintiff, Western Refining Company, L.P., alleges as follows:

## INTRODUCTION

1. Plaintiff entered a series of contracts with the United States government for the purchase of fuel.

2. The contracts contained a price adjustment clause that permitted the government to change the price it paid for fuel by as much as sixty percent of the contract price.

3. In *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit held that the government's price adjustment clause was illegal.

4. The government profited from its illegal price adjustment clause by materially underpaying Plaintiff and then denied Plaintiff's claim for relief.

5. Plaintiff seeks here to be made whole for the government's violation of the law.

## THE PARTIES

6. Plaintiff Western Refining Company, L.P. ("Western Refining"), is a Delaware limited partnership with its principal place of business in El Paso, Texas. During part of the relevant period, Western Refining Company, L.P., operated under the name of Refinery Holding

Company, L.P. Refinery Holding Company, L.P., is the successor in interest to the rights of El Paso Refining Company, Ltd., and El Paso Refinery, L.P., in certain of the contracts at issue in this case.

7. Defendant is the United States acting, *inter alia*, through the Defense Energy Support Center ("DESC"). DESC is part of the Defense Logistics Agency, which is part of the Department of Defense. DESC previously was known as the Defense Fuel Supply Center.

## JURISDICTION

8. This Court has jurisdiction to entertain this action pursuant to 28 T.S.C. § 1491 (2002), 41 U.S.C. § 601-13 (1002), and U.S. Const. amend V.

## STATEMENT OF THE CASE

### I. THE CONTRACTS

9. From at least 1980 to 1999, DESC was the largest purchaser of fuel in the United States and the sole purchaser and user of military grade fuels. During this period, DESC purchased over $90 billion of military fuel. By virtue of DESC's market position, DESC had substantial market power and substantial ability to affect the prices it paid for military fuels.

10. From at least 1986 to 1999, Western Refining and DESC entered a series of long-term contracts for the purchase of approximately $170 million of military fuel. The contracts provided for the purchase of different types of military fuel at different locations in the United States.

11. Western Refining's contracts contained DESC's standard price adjustment clause. DESC's price adjustment clause permitted DESC to change the monthly price it paid Western Refining for fuel by as much as sixty percent of the contract price.

12. DESC has acknowledged at least two authorized purposes for its price adjustment clause: First, to protect DESC and Western Refining against market fluctuations, and, second, to ensure that the prices DESC paid Western Refining for military fuels under the long-term contracts reflected at least fair market value.

13. DESC's price adjustment clause permitted DESC to adjust the prices it paid Western Refining for fuel based on changes in price indexes published by the Department of Energy in the *Petroleum Marketing Monthly* (hereafter the "PMM").

14. Contrary to the acknowledged purposes of DESC's price adjustment clause, the Department of Energy did not design or intend for the PMM indexes to be used to set or adjust prices in response to market fluctuations, and the PMM indexes did not reflect the market value for the military fuels DESC purchased.

15. As a result of DESC's use of the PMM indexes in its price adjustment clause, DESC paid Western Refining prices for fuel that were materially below fair market value.

16. DESC used the PMM indexes in its price adjustment clause in contravention of the acknowledged purposes of the clause despite knowing that the PMM indexes were not designed to set or adjust prices in response to market fluctuations and despite knowing that the PMM indexes did not reflect fair market value.

17. DESC also used other price indexes in its standard price adjustment clause to make price adjustments. On information and belief, DESC knew that some of the other price indexes it used to set or adjust prices were not appropriate for these purposes.

## II. DESC'S ILLEGAL PRICE ADJUSTMENT CLAUSE

18. DESC's price adjustment clause was illegal.

19. In *Barrett Refining Corp. v. United* States, 242 F.3d 1055 (Fed. Cir. 2001), the Federal Circuit held that the same price adjustment clause DESC used in Western Refining's contracts violated law and regulation because it did not base price adjustments on a supplier's own established prices or costs. Instead, DESC illegally based price adjustment on price indexes, such as the PMM indexes, which resulted in prices that were materially below fair market value.

20. DESC violated the law in other respects in awarding and administering Western Refining's contracts. DESC violated the Office of Federal Procurement Policy Act and its implementing regulations by using illegal auction techniques, at least after July 16, 1989. DESC awarded Western Refining's contracts in violation of DOD Federal Acquisition Regulation ("DFAR") pt. 219, by improperly soliciting and awarding portions of the procurements set aside for small and small disadvantaged businesses. DESC violated the equal protection component of the Fifth Amendment's due process clause by extending to minority-owned businesses bidding preferences that were not narrowly tailored to further a compelling government interest.

21. DESC violated the law knowingly.

22. DESC thus combined its substantial market power and substantial ability to affect the price of military fuel with a knowing violation of law and regulation to reduce the price it paid for fuel below fair market value.

23. DESC profited from violating the law by paying Western Refining materially less than fair market value of the fuel DESC purchased.

## III. CERTIFIED CLAIMS

24. Pursuant to the Contract Disputes Act, Western Refining submitted certified claims to DESC's contracting officer seeking relief from DESC's use of the PMM and other price indexes and DESC's violation of law in awarding and administering Western Refining's contracts.

25. On October 14, 2003, Western Refining submitted certified claims under the following contracts:

| | |
|---|---|
| DLA600-86-D-0637 | DLA600-91-D-0574 |
| DLA600-87-D-0568 | DLA600-92-D-0551 |
| DLA600-88-D-0592 | SPO600-95-D-0520 |
| DLA600-89-D-0553 | SPO600-98-D-0503 |
| DLA600-90-D-0534 | |

## IV. DESC'S FINAL DECISIONS

26. On April 6, 2004, DESC's contracting officer denied Western Refining's claims under contract numbers SPO600-95-D-0520 and SPO600-98-D-0503.

27. In a separate April 6, 2004 letter, DESC's contracting officer refused to issue a final decision on Western Refining's remaining seven claims, erroneously asserting that Western Refining was not the successor in interest to the claims. DESC's contracting officer thereby constructively denied Western Refining's remaining seven claims.

28. DESC denied that Western Refining was entitled to any recovery and denied Western Refining's claims in their entirety.

29. Pursuant to the Contract Disputes Act, Western Refining hereby timely files suit upon and appeals DESC's April 6, 2004 decisions actually or constructively denying Western Refining's claims.

**COUNT I**
**(Illegality)**

30. Western Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 29, above.

31. DESC knowingly awarded and administered each of Western Refining's contracts in violation of law and regulation, *inter alia*, by basing price adjustments on price indexes, such as the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

32. DESC knowingly awarded and administered each of Western Refining's contracts in violation of law and regulation, *inter alia*, by violating the Office of Federal Procurement Policy Act and its implementing regulations, DFAR pt. 219, and the equal protection component of the Fifth Amendment's due process clause.

33. DESC's violation of law and regulation in awarding and administering Western Refining's contracts damaged Western Refining.

34. Western Refining is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $43,117,683.76, plus interest, by way of reformation, *quantum valebant*, or rescission and restitution.

**COUNT II**
**(Misrepresentation)**

35. Western Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 34 above.

36. DESC knowingly awarded and administered Western Refining's contracts in violation of law and regulation.

37. DESC knowingly based price adjustments on the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

38. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose its violation of law and regulation.

39. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose that the PMM and other price indexes were not designed or intended to be used to set or adjust prices.

40. Western Refining reasonably relied upon DESC's material and/or fraudulent misrepresentations as an inducement to enter the contracts.

41. DESC's material and/or fraudulent misrepresentations damaged Western Refining.

42. Western Refining is entitled to recovery based on the fair market value of the fuel it delivered to DESC in an amount of at least $43,117,683.76, plus interest, by way of rescission and restitution, damages, or reformation.

**COURT III**
**(Breach of Contract)**

43. Western Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42, above.

44. DESC's compliance with law and regulation in awarding and administering the contracts was a material condition of the contracts upon which Western Refining reasonably relied in entering the contracts.

45. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material condition of the contracts upon which Western Refining reasonably relied in entering the contracts.

46. In contravention of DESC's contractual obligations, DESC violated law and regulation in awarding and administering the contracts.

47. In contravention of DESC's contractual obligations, DESC based price adjustments on standards such as the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below market value.

48. DESC's violation of law and regulation in awarding and administering the contracts constituted breach of contract.

49. DESC's use of the PMM and other price indexes to set or adjust prices under the contracts constituted breach of contract.

50. DESC's breach of contract damaged Western Refining.

51. Western Refining is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $43,117,683.76, plus interest, by way of rescission and restitution, or damages.

**COUNT IV**
**(Implied-In-Fact Contract)**

52. Western Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 51 above.

53. DESC knowingly awarded and administered each of Western Refining's contracts in violation of law and regulation.

54. DESC's violation of law and regulation in awarding and administering Western Refining's contracts rendered at least the price terms of Western Refining's contracts invalid and unenforceable.

55. DESC's violation of law and regulation in awarding and administering Western Refining's contracts damaged Western Refining.

56. At least the pricing terms of Western Refining's contracts are replaced by an implied-in-fact contract to pay the fair market value of the fuel Western Refining delivered to DESC.

57. Western Refining is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $43,117,683.76, plus interest, by way of an implied-in-fact contract and/or *quantum valebant*.

**COUNT V**
**(Failure of Consideration and Frustration of Purpose)**

58. Western Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 57 above.

59. DESC's compliance with law and regulation in awarding and administering the contracts was a material part of the consideration upon which Western Refining reasonably relied in entering the contracts and a material purpose of the contracts.

60. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material part of the consideration upon which Western Refining reasonably relied in entering the contracts and a material purpose of the contracts.

61. DESC violated law and regulation in awarding and administering the contracts.

62. DESC based price adjustments on the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

63. DESC's violation of law and regulations in awarding and administering the contracts constituted a failure of consideration and frustrated the purpose of the contracts.

64. DESC's use of the PMM and other price indexes that were not designed or intended to be used to set or adjust prices constituted a failure of consideration and frustrated the purpose of the contracts.

65. This failure of consideration and frustration of the purpose of the contracts damaged Western Refining.

66. Western Refining is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $43,117,683.76, plus interest, by way of rescission and restitution.

**COUNT VI**
**(Mistake)**

67. Western Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 66, above.

68. Western Refining entered and performed the contracts with the intent that they comply with law and regulation. This was a material condition upon which Western Refining reasonably relied in entering the contracts.

69. Western Refining entered and performed the contracts with the intent that the standards used to make price adjustments were designed or intended to be used to set or adjust prices. This was a material condition upon which Western Refining reasonably relied in entering the contracts.

70. DESC did not comply with law and regulation in awarding and administering the contracts.

71. DESC based price adjustments on the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

72. If DESC did not knowingly award and administer contracts in violation of law and regulation, as alleged above, then DESC must be presumed to have intended to award and administer contracts in accordance with law and regulation.

73. If DESC did not know that the PMM and other price indexes were not designed or intended to be used to set or adjust prices, as alleged above, then DESC must be presumed to have used the PMM and other price indexes with the intent that they were designed or intended to be used to set or adjust prices.

74. As the result of a mistake relating to DESC's compliance with law and regulation, DESC and Western Refining entered and performed contracts in violation of law and regulation.

75. As a result of a mistake, DESC and Western Refining entered and performed contracts using the PMM and other price indexes to set or adjust prices.

76. If DESC and Western Refining had not been mistaken, DESC and Western Refining would not have entered and performed contracts in violation of law and regulation.

77. If DESC and Western Refining had not been mistaken, DESC and Western Refining would not have entered and performed contracts using the PMM and other price indexes to set or adjust prices.

78. Alternatively, if DESC was not mistaken in awarding and administering contracts in violation of law and regulation, then DESC knew or should have known of Western

Refining's mistake and failed to meet its duty timely to disclose this mistake to Western Refining.

79. If DESC was not mistaken in awarding and performing contracts using the PMM and other price indexes to set or adjust prices, then DESC knew or should have known of Western Refining's mistake and failed to meet its duty timely to disclose this mistake to Western Refining.

80. The parties' mutual mistake and/or DESC's failure to disclose Western Refining's unilateral mistake damaged Western Refining.

81. Western Refining is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $43,117,683.76, plus interest, by way of reformation, or rescission and restitution.

**COUNT VII**
**(Taking)**

82. Western Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 81 above.

83. Western Refining has property rights in and in relation to the fuel it delivered to DESC. In addition, Western Refining has property rights in relation to DESC's procurement of the fuel Western Refining delivered.

84. With no fully supporting claim of right, DESC took possession of and infringed upon Western Refining's property rights in and in relation to the fuel it delivered.

85. DESC's taking of Western Refining's property was for a public purpose.

86. To the extent that DESC's taking of Western Refining's property was effected in conjunction with a violation of law and regulation, DESC acted within the general scope of its authority to procure the fuel.

87. DESC effected a taking of Western Refining's property within the meaning of the Fifth Amendment of the United States Constitution.

88. DESC has not paid Western Refining just compensation for the taking of Western Refining's property.

89. DESC's failure to pay Western Refining just compensation for the taking of its property violated the Fifth Amendment of the United States Constitution and thereby damaged Western Refining.

90. Western Refining is entitled to recover just compensation in an amount of at least $43,117,683.76, plus interest from the time of the taking.

**PRAYER FOR RELIEF**

WHEREFORE, Western Refining requests judgment as follows:

1. $43,117,683.76, plus interest, or such further amount as established prior to judgment.

2. Such other and further relief, including attorney fees, as the Court may deem just and equitable.

Respectfully submitted,

J. Keith Burt

J. Keith Burt
Mayer, Brown, Rowe & Maw LLP
1909 K Street, NW
Washington, DC 20006
(202) 263-3208 (phone)
(202) 263-5208 (fax)

Counsel for Plaintiff
Western Refining Company, L.P.

April 1, 2005